UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NICOLE HABERLE,<br>As Administrator for<br>the Estate of TIMOTHY NIXON, Deceased,<br><br>Plaintiff,<br><br>v.<br><br>THE BOROUGH OF NAZARETH,<br><br>Defendant. | No. 5:15-cv-02804 |

# O P I N I O N
**Defendant's Motion to Dismiss, ECF No. 39—Granted**
**Plaintiff's Second Amended Complaint, ECF No. 38—Dismissed**

**Joseph F. Leeson, Jr.**                                                                                      **October 2, 2018**
**United States District Judge**

      Plaintiff Nicole Haberle brings claims under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12101-213, against the Borough of Nazareth resulting from the tragic suicide of Timothy Nixon in 2013. Haberle alleges that the Borough of Nazareth failed to accommodate Nixon because it did not implement policies to guide its police officers during encounters with citizens experiencing mental health crises. The Defendant Borough of Nazareth has moved to dismiss Haberle's claims. Because this Court concludes that Haberle has failed to allege that the Borough acted with deliberate indifference as required to state a claim for compensatory damages under the ADA, the Borough's motion to dismiss is granted.

## I. BACKGROUND

### A. Dismissal of Plaintiff's First Amended Complaint

Because this Court writes primarily for the parties, it assumes familiarity with its opinion granting the previous motion to dismiss, ECF No. 30, *Haberle v. Troxell*, No. 5:15-CV-02804, 2016 WL 1241938, at *8 (E.D. Pa. Mar. 30, 2016), and recites only the facts that are necessary for context. This case results from the 2013 suicide of Timothy Nixon, an adult resident of the Borough of Nazareth. Nixon suffered from mental health issues for many years. Nixon and Plaintiff Nicole Haberle had lived together on and off for fourteen years and had two children together. On the morning of May 20, 2013, Nixon called Haberle and told her he was contemplating suicide. When Haberle learned that Nixon had obtained a firearm, she called the Nazareth police department. Officer Daniel Troxell of the Nazareth police department, together with officers from surrounding municipalities, responded to the apartment where Nixon was. When the officers disagreed on how to approach the situation, Troxell criticized the others for their hesitancy to act, knocked on the door of the apartment, and presumably announced himself as a police officer. Nixon did not answer the door and took his own life instead.

Haberle, as the administratrix of Nixon's estate, filed a complaint against Troxell, his supervisors, the Borough of Nazareth, and various Borough officials, alleging violations of a number of Nixon's constitutional rights under § 1983 and intentional infliction of emotional distress. Haberle also alleged a claim for disability discrimination in violation of the ADA against the Borough. Haberle filed an Amended Complaint to correct certain factual averments, and the Defendants moved to dismiss all of Haberle's claims. This Court granted the motion to dismiss in its entirety and denied leave to amend. Haberle filed an appeal in the Third Circuit Court of Appeals.

## B. The Third Circuit's Framework for Haberle's ADA Claim

On appeal, the Third Circuit Court of Appeals affirmed this Court's dismissal of the § 1983 claims. *Haberle v. Troxell*, 885 F.3d 170 (3d Cir. 2018). With respect to Haberle's ADA claim, the court held, as a matter of first impression in the Third Circuit, that the ADA can apply to police conduct during an arrest and that police officers may violate the ADA by failing to provide reasonable accommodations for a qualified arrestee's disability. *Id.* at 180. The Third Circuit Court of Appeals stated that a claim for compensatory damages under the ADA requires proof of "intentional discrimination," which requires the plaintiff to show deliberate indifference. *Id.* at 181. To plead deliberate indifference, the plaintiff must allege that the defendant (1) knew that a federally protected right was substantially likely to be violated and (2) failed to act despite that knowledge. *Id.* (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 261 (3d Cir. 2013)).

The Third Circuit Court of Appeals outlined two routes available to Haberle to allege that the Borough was aware that its policies made it substantially likely that disabled individuals would be denied their rights under the ADA: (1) by alleging facts suggesting that the existing policies caused a failure to adequately respond to "a pattern of past occurrences of injuries like the plaintiffs," or (2) by alleging facts indicating "that the risk of cognizable harm was so great and so obvious that the risk and the failure to respond will alone support finding deliberate indifference." *Id.* (quoting *Beers-Capitol v. Whetzel*, 256 F.3d 120, 136-37 (3d Cir. 2001) (internal quotations and alterations omitted)). The court concluded that Haberle's complaint could not follow either of these paths. Her complaint contained only vague references to a history of civil rights violations without any allegation of past injuries similar to Nixon's. *Id.* at 182. Although Haberle alleged that the Borough did not adopt a set of policies for police

interaction with mentally disturbed citizens, she did not allege that the policies were drafted because the Borough was aware that existing policies were substantially likely to lead to a violation of rights. *Id.* Nor did Haberle allege that the risk of harm was "so great and so obvious" as to support deliberate indifference. *Id.*

Although the Third Circuit Court of Appeals found that Haberle had not stated an ADA claim against the Borough, it remanded with instructions that "Haberle should be given the narrow opportunity to amend her complaint with respect to her ADA claim, particularly her allegations of a history of civil rights violations by the Borough" that would support her deliberate indifference claim. *Id.* at 182 n.12.

### C. Haberle's Second Amended Complaint

Consistent with the Third Circuit's opinion, Haberle filed a Second Amended Complaint alleging ADA claims against the Borough. ECF No. 38. The Second Amended Complaint contains the following facts that were not included in the first Amended Complaint:

Prior to the events at issue in this case, Officer Frederick Lahovski, Jr., an officer of the Nazareth Police Department with training in both mental health issues and police department procedures, drafted a set of policies and procedures to provide the Department with guidance in interacting with mentally or emotionally disturbed citizens. Second Am. Compl. ¶¶ 30-32. Officer Lahovski has experience as a crisis intervention worker, and consulted mental health professionals, including the Assistant Director for Crisis Intervention of a neighboring county, as part of the process of drafting the policy. Second Am. Compl. ¶¶ 31, 33. Before Officer Lahovski drafted the policies, the Borough had no policy in place to guide Nazareth police officers' interactions with mentally challenged citizens. Second Am. Compl. ¶ 34. Officers of the Nazareth Police Department routinely encountered several citizens known to be mentally

challenged, including two people known as Dickey and Rosie; Haberle alleges that the Department had a custom and practice of verbally abusing, harassing, and in at least one instance, arresting, a mentally challenged citizen without accommodating their mental disability. Second Am. Compl. ¶¶ 35-36. Although Officer Lahovski identified the "grave risks" to mentally challenged citizens posed by the absence of a Department policy for accommodating mental disabilities, the Borough did not adopt the policy and the Department did not implement it. Second Am. Compl. ¶¶ 38-39. Haberle alleges that, had the Borough adopted Officer Lahovski's policy, Nixon would have received life-saving professional medical assistance. Second Am. Compl. ¶ 43.

## II. ANALYSIS

### A. The Second Amended Complaint fails to state an ADA claim for monetary damages because it does not allege deliberate indifference.

Pursuant to the Third Circuit's opinion, Haberle must allege deliberate indifference to succeed on her ADA claim against the Borough.[1] "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997) (internal quotations and

---

[1] Haberle's Response to the present motion to dismiss seems to suggest that she can state an ADA claim apart from the allegations of deliberate indifference required for compensatory damages. *See* Pl.'s Opp. 11, ECF No. 40 ("At the outset, it is important to note that nowhere in Defendant's Motion to Dismiss is . . . any challenge to Plaintiff's claim under the Americans with Disabilities Act [citation omitted] *per se* . . . ."). However, Haberle brings claims for compensatory damages, *see* Second Am. Compl. 13; the viability of her claims depends upon whether she can obtain those damages, and thus, whether she has alleged deliberate indifference.

alterations omitted)).[2] It not enough to show that "an otherwise sound program has occasionally been negligently administered" or that "an injury or accident could have been avoided if an [employee] had better or more training." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 391 (1989). Rather, a plaintiff must show that the lack of training or an appropriate policy resulted from a "conscious" or "deliberate" choice to ignore the risk of constitutional violations that would likely ensue without appropriate training or policies. *Id.* at 390.

As the Third Circuit Court of Appeals recognized in this case, a plaintiff has two available methods to show deliberate indifference. Ordinarily, "[a] pattern of similar constitutional violations by untrained employees" is necessary "to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson,* 563 U.S. 51, 62 (2011). A pattern of violations puts municipal decisionmakers on notice that a new policy or training program is necessary, and "[t]heir continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 407 (1997). In the alternative, a plaintiff may establish deliberate indifference on a "single-incident" theory. This theory allows recovery even without a pattern of past violations in "situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of supervisory officials to respond will alone support findings of the existence of an

---

[2]   Throughout this opinion, this Court relies on case law interpreting the standard for deliberate indifference in the context of § 1983 claims. As the Third Circuit panel recognized, the same deliberate indifference standard applies to claims under § 1983 and the ADA. 885 F.3d at 181-82 (citing *S.H. ex rel. Durrell*, 729 F.3d at 263 n.23).

unreasonable risk . . . and of indifference to it." *Beers–Capitol v. Whetzel*, 256 F.3d 120, 134 (3d Cir. 2001) (quoting *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (internal quotations omitted)). Haberle has not alleged sufficient facts to establish deliberate indifference on either theory.

> i. **Haberle has failed to allege a pattern of similar violations sufficient to show deliberate indifference by the Borough.**

The Third Circuit has held that the first way—"perhaps the easiest way"—a plaintiff can make out a deliberate indifference claim is by alleging that the defendant "failed to respond appropriately in the face of an awareness of a pattern of such injuries." *Beers-Capitol*, 256 F.3d at 134 (quoting *Sample*, 885 F.2d at 1118). A single incident does not establish a pattern of violations sufficient to show deliberate indifference. *Id.* at 138 ("[O]ne incident does not a pattern make."); *see also Wood v. Williams*, 568 Fed. App'x 100, 105–06 (3d Cir. 2014) (holding that plaintiff could not establish deliberate indifference to a risk of First Amendment retaliation based on a single previous incident of alleged retaliation); *Nace v. Pennridge Sch. Dist.*, 185 F. Supp. 3d 564, 577 (E.D. Pa. 2016) (concluding that plaintiff did not establish pattern of past incidents to support failure to train claim against school district based on coach's unlawful sexual relationship with plaintiff where plaintiff produced evidence of only one analogous incident in the past), *appeal dismissed* (Aug. 4, 2016), *aff'd in part, vacated in part on other grounds*, No. 17-1383, 2018 WL 3737960 (3d Cir. Aug. 6, 2018).

Nor can a plaintiff show a pattern of past violations where the previous incidents involve different factual circumstances than the plaintiff's alleged injury. *See Connick*, 563 U.S. at 62–63 (holding that plaintiff in § 1983 claim resulting from district attorney's nondisclosure of blood-test evidence that led to wrongful conviction did not establish deliberate indifference based on

7
100218

four prior Brady violations that did not involve nondisclosure of physical or scientific blood-test results); *Lemar v. City of Philadelphia*, No. CIV.A. 14-7102, 2015 WL 4450976, at *4 (E.D. Pa. July 20, 2015) (finding that plaintiff had not shown deliberate indifference because the court could not determine that previous illegal stop and frisk encounters occurred under similar circumstances); *Lawson v. City of Coatesville,* 42 F. Supp. 3d 664, 680 (E.D. Pa. 2014) (finding evidence of false arrests based on inaccurate warrants insufficient to establish "similar constitutional violations" when plaintiff's claim was based on arrest without a warrant).

Haberle's Second Amended Complaint includes various allegations of past civil rights violations by the Borough. Haberle alleges a "history of violating the legal rights of residents of Nazareth," and mentions past incidents of alleged rights violations, such as a "use of excessive force involving a man who was repeatedly tased while handcuffed," an "unlawful prosecution of three Borough residents for exercising their First Amendment rights," and two incidents of retaliatory termination of Borough employees. Second Am. Compl. ¶ 29. This Court evaluated identical allegations when ruling on the prior motion to dismiss, *see* First Amended Complaint ¶ 42, ECF No. 15, and concluded that these allegations did not "put Borough policymakers on notice that their police officers needed additional training to confront the scenario that Troxell faced because none of those previous events bears even a passing similarity to these circumstances." 2016 WL 1241938, at *8. On appeal, the Third Circuit Court of Appeals agreed with this Court's analysis and found that the allegations of previous civil rights violations did not establish deliberate indifference. The court commented that Haberle offered only "hazy support" for her allegations and that a "generalized history of civil rights violations" did not establish deliberate indifference because Haberle did not allege that the past violations were similar to the violation at issue in this case. 885 F.3d at 182. Haberle has not modified these allegations in her

Second Amended Complaint, and they still fall short of establishing a pattern of past similar violations.

Haberle's new allegations about the Nazareth police department's previous interactions with mentally challenged citizens also fail to establish deliberate indifference based on a pattern of past violations.[3] Haberle alleges a vague "custom and practice of being verbally abusive, harassing, and, in at least one instance, arresting a mentally challenged person . . . ." Second Am. Compl. ¶ 36. A single arrest cannot establish a pattern of civil rights violations. Haberle's allegations of verbal abuse and harassment, without reference to any particular instances, are the sort of "vaguely referenced violations" that the Third Circuit rejected before. Most importantly, although these allegations come closer to alleging similar past violations in that they pertain to mentally challenged citizens, Haberle does not allege that any of these citizens suffered injuries similar to what she alleges Nixon suffered. Even assuming that Haberle can support her allegations, she has alleged at most a pattern of harassment, verbal abuse, and false arrest—not a pattern of Nazareth police mishandling encounters with citizens experiencing mental health crises that result in citizens' suicides. The allegations in the Second Amended Complaint do not establish that past events put the Borough on notice of the need for a policy governing interactions with citizens experiencing mental health crises and of the risk that failing to adopt

---

[3] The Borough argues that these past instances cannot help Haberle establish deliberate indifference because they involved "mentally challenged" citizens, whereas Haberle alleges a failure to accommodate a citizen suffering from a "serious mental health episode" involving severe depression, *i.e.* a mental illness. Def.'s Reply 2-3, ECF No. 41. The Borough may be drawing a distinction where no difference exists, and its argument does not persuade this Court, particularly at the motion to dismiss stage where the Court has heard no expert evidence concerning the difference, if any, between "mental disabilities" and "mental illness."

such a policy could lead to a citizen's suicide. Therefore, Haberle has failed to allege deliberate indifference based on a pattern of similar past violations.

### ii. Haberle has failed to allege deliberate indifference on a single-incident theory.

In addition to showing a municipality's failure to act despite knowledge of a pattern of similar past violations, a plaintiff may establish deliberate indifference based on the more-rigorous "single-incident" theory. The single-incident theory recognizes "the possibility, however rare, that the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable . . . without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. "Liability in single-incident cases depends on the likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." *Id.* at 223-24 (quoting *Bryan Cnty.*, 520 U.S. at 409 (internal quotations and alterations omitted)).

In *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989), the Supreme Court offered a hypothetical example of this "single-incident" based on a municipality's failure to train its employees: because city authorities know "to a moral certainty" that their police officers will be required to arrest fleeing suspects, if a city arms the officers with firearms, "the need to train officers in the constitutional limitations on the use of deadly force" is so obvious that a failure to provide such training could provide a basis for single-incident municipal liability. The Supreme Court later addressed a real claim of single-incident liability in *Connick v. Thompson,* where an exonerated convict sought to hold the New Orleans District Attorney liable for failing to train prosecutors on discovery disclosure obligations under *Brady v. Maryland*[4] after the District

---

[4] 373 U.S. 83 (1963).

Attorney's office withheld an exculpatory crime lab report. 563 U.S. at 51. The court concluded that the facts before it did not "fall within the narrow range of *Canton*'s hypothesized single-incident liability" because, unlike untrained but armed police officers, prosecutors have legal training and professional obligations that equip them to make proper decisions. *Id.* at 64. Because prosecutors have greater tools to ensure they will make proper decisions, recurring constitutional violations are not the "obvious consequence" of not providing specific training about *Brady*. *Id.* at 66.

Although the injury alleged in this case lies somewhere on the continuum between *Canton* and *Connick*, this Court cannot conclude that Nixon's injury was so obvious a result of the lack of a policy as to place it on the level of the *Canton* hypothetical. When ruling on the first motion to dismiss, this Court recognized that this case is not one of the "rare cases" where the alleged injury was so obvious that it can support single-incident liability. 2016 WL 1241938, at *8. On appeal, the Third Circuit panel quoted with approval this Court's conclusion that "[t]he failure to train police officers to refrain from doing so much as knocking on the door when they receive a call that a mentally ill individual has stolen a firearm, is contemplating suicide, and may be in the presence of others whose status is unknown is not so obvious [a deficiency] that the Borough could be said to have been deliberately indifferent to the need for that training." 885 F.3d at 183 (citing *id.*).

The new allegations in the Second Amended Complaint do not alter this conclusion. Haberle alleges that Officer Lahovski made Borough officials aware of "the grave risks to mentally challenged persons" as a result of the Nazareth police department continuing to operate without policies for accommodating mental disabilities. However, Haberle does not allege that Officer Lahovski's warnings included the likelihood that continuing to operate without a policy

would lead to a mentally disturbed citizen's suicide. In fact, she makes no allegations about what specifics risks to mentally disabled citizens Officer Lahovski perceived and how he designed the policies and procedures to mitigate those risks. Additionally, the Second Amended Complaint contains no allegation that Nazareth police officers encountered mentally disturbed citizens who posed a threat to themselves on a recurring basis. *See Logan v. Bd. of Educ. of Sch. Dist. of Pittsburgh*, No. CV 15-499, 2017 WL 1001602, at *8 (W.D. Pa. Mar. 15, 2017), *aff'd*, No. 17-2095, 2018 WL 3738622 (3d Cir. Aug. 6, 2018) (finding that plaintiff failed to state claim that city was deliberately indifferent to risk of sexual abuse of student by school police officer where complaint included no allegations that city knew that school police officers were danger to students or that any obvious risk was brought to their attention); *Nin v. Luzerne Cty.*, No. 3:17-CV-802, 2018 WL 3715724, at *7 (M.D. Pa. Aug. 3, 2018) (finding that plaintiff had not stated single-injury basis for deliberate indifference where complaint contained no allegations demonstrating that the likelihood of plaintiff's situation would recur); *Moriarty v. DiBuonaventura*, No. 14-CV-2492 JBS/AMD, 2014 WL 3778728, at *8 (D.N.J. July 31, 2014) (dismissing claim where nothing in complaint permitted inference that plaintiff's alleged injuries were a highly predictable consequence of a lack of training).

Although Haberle alleges that Nazareth police officers regularly encountered mentally challenged citizens, such as Dickey and Rosie, she alleges only that these encounters resulted in verbal abuse, harassment, and at least one false arrest. None of her allegations suggest an obvious risk of these individuals harming themselves or others, or any past instance of a mentally challenged citizen harming himself or trying to do so. *Compare Thomas*, 749 F.3d 217 (denying summary judgment on deliberate indifference claim where "Thomas put forward evidence that fights regularly occurred in the prison"); *Wichterman v. City of Philadelphia*, No. CV 16-5796,

2017 WL 1374528, at *4 (E.D. Pa. Apr. 17, 2017) (finding that plaintiff had stated deliberate indifference claim where police left DUI arrestee who had admitted he used heroin alone in cell without treatment and he died, and plaintiff alleged that officers were "particularly attuned" to the pattern of opiate abuse among arrestees). Put simply, Haberle does not allege that the Borough was aware of conditions that made Nixon's suicide the "highly predictable consequence" of the Borough's lack of a policy for accommodating mentally disturbed arrestees. *Bryan County,* 520 U.S. at 409 (explaining the Supreme Court's reasoning in *City of Canton,* 489 U.S. at 390 n.10). Therefore, she has failed to allege deliberate indifference as required to state a claim for compensatory damages against the Borough.

### III. CONCLUSION

For the aforementioned reasons, Haberle has failed to state a claim against the Borough under the ADA. This Court grants the Borough's motion to dismiss and dismisses Haberle's claims with prejudice because she has already had two opportunities to amend her complaint. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge